FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2019 OCT -4 PM 12: 40

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

UNITED STATES OF AMERICA,

Plaintiff,

v.   CASE NO. 3:19-cv-1139-J-39MCR

$121,180.00 IN UNITED STATES
CURRENCY,

Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff United States of America brings this complaint and alleges upon information and belief as follows:

### I. NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States of America the sum of $121,180.00 in United States Currency (defendant funds).

2. The defendant funds were seized on February 11, 2019 in Jacksonville, Florida and are in the government's custody, having been

deposited into the United States Marshals Service's Seized Asset Deposit Fund Account on February 14, 2019.

## II. JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1345, which provides the Court with jurisdiction over all civil actions commenced by the United States, and pursuant to 28 U.S.C. § 1355, which provides the Court with jurisdiction over actions to recover or enforce forfeitures.

4. This Court has *in rem* jurisdiction over the defendant funds because pertinent acts giving rise to the forfeiture occurred in the Middle District of Florida. 28 U.S.C. § 1355(b)(1)(A).

5. Venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395(a), because the defendant funds were seized within the Middle District of Florida, Jacksonville Division.

6. Because the defendant funds are in the government's possession, custody, and control, the United States requests that this Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(1). Rule G(3)(b)(1) requires the Clerk to issue a warrant of arrest *in rem* for defendant property if such property is in the government's possession, custody, or control.

7. After the Court issues the warrant of arrest *in rem*, the United States will execute the warrant pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

### III. FORFEITURE AUTHORITY

8. The defendant funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), because they constitute proceeds traceable to the exchange of a controlled substance or were intended to be exchanged for a controlled substance in violation of 21 U.S.C. §§ 801 *et seq.*

9. Drug Enforcement Administration (DEA) Special Agent (SA) Robney R. Bradshaw has been investigating a seizure of currency from Alton George Smith. The following facts, gathered by SA Bradshaw during the investigation, support a reasonable belief that the government will be able to show by a preponderance of the evidence that the defendant funds are subject to forfeiture, pursuant to 21 U.S.C. 881(a)(6).

### IV. FACTS

10. SA Bradshaw has been with the DEA since August 1997, and has conducted numerous drug trafficking investigations. As part of his experience and training, SA Bradshaw also is familiar with the practice of transferring and attempting to launder illicit drug proceeds. Drug trafficking

is a "cash business" in which drug dealers receive large amounts of cash as proceeds of their narcotics transactions and use large amounts of cash to purchase these drugs. Drug traffickers also use otherwise legitimate businesses to assist them in laundering their narcotics proceeds which are deposited and commingled with other funds or accounts of the business, thus "laundering" the narcotics proceeds.

### Florida Highway Patrol Traffic Stop and Interviews

11. On February 11, 2019, Florida Highway Patrol Trooper Payne saw a silver Mazda sedan traveling southbound on Interstate 95 near the Jacksonville airport. Because the side window tint appeared to be darker than that allowed by law, Trooper Payne, in a fully marked patrol car, followed the Mazda, and activated his emergency lights when he caught up to the car. The Mazda did not stop, even though there was ample space and opportunity to do so. When the Mazda finally pulled over, Trooper Payne approached and spoke with the driver, Dewayne George Ramdial, who was also the owner of the Mazda. The trooper directed Ramdial to get out of the car as he explained the window tint law.

12. When the trooper asked Ramdial where he had been coming from, Ramdial informed the trooper he had been driving from, "Right up the street." When Trooper Payne asked whether that meant from Florida or

Georgia, Ramdial said, "Florida." Ramdial fidgeted nervously while answering these questions.

13. Trooper Payne also asked the passenger, Alton George Smith, where he and Ramdial had started their trip. Smith appeared to avoid the question by asking questions about the tint. Trooper Payne repeated the question two or three times before Smith replied, "Georgia." Because of their nervous behavior and conflicting stories about their departure point, the trooper suspected Ramdial and Smith were involved in criminal activity and called for backup.

14. FHP Troopers arrived and used police dog, "ACE," to conduct a free air sniff on the Mazda. ACE positively alerted for the presence of narcotics, and the troopers detained Ramdial and Smith, placing them in the rear of Trooper Payne's patrol car. As Smith entered the patrol car he stated, that there was nothing illegal in the car; it was only money for his business; and that he had just gone to buy a truck.

15. The officers searched the Mazda and located two backpacks on the rear seat, one of which contained a large amount of cash. Smith said the backpack contained $131,000. The money, as shown below, was in multiple rubber banded bundles.



There were also multiple rubbers bands located throughout the car.

16. Trooper Payne and a second trooper performed a line up with five brown paper bags, as shown below. One of the bags held the cash. The others contained random items, such as a radio battery or the tint meter. ACE alerted on the bag containing the U.S. currency.



17. While sitting in the rear of the patrol car, Smith and Ramdial were video and audio recorded.

18. Smith initially had a telephone conversation in Patois (a Jamaican dialect) and after that also began to speak to Ramdial in Patois.

19. Smith, then speaking in English on the phone, stated "We in the back of car because they find my money I go to buy my truck, the truck and trailer....didn't worth what he talking about so I didn't buy it, so the picture he sent was some bullshit. Money is not illegal." The officers then heard Smith bragging on the phone about how much money he makes, stating that he makes over $300,000 per year.

20. Smith and Ramdial also said to each other:

Smith:    "Inconsistent story?.....what inconsistent story?"

Ramdial:  "I'm coming from up the street"

Smith:    "Yeah up the street from Georgia"

This conversation seemed to consist of Smith and Ramdial comparing what they had separately told Trooper Payne, notably after Trooper Payne had explained to them that their stories were inconsistent. Ramdial told the trooper that they were coming from Florida, but Smith said they had been coming from Georgia. Smith appeared to be coaching Ramdial by saying, "Yeah, up the street from Georgia."

21. Smith also appears on the video taking apart his phone and removing the SIM card and giving it to Ramdial. Smith then puts a different SIM card in his phone. It appears this action may have been Smith handing off incriminating evidence to Ramdial.

22. After leaving Smith and Ramdial in the back seat of the patrol car, Trooper Payne separated them and spoke with each individually. Trooper Payne asked Smith about the money. Smith explained that it was $131,000.00, which he got from selling two trailers and a truck. Smith also stated that he "just accumulated the money." Smith showed Trooper Payne a bank account on his phone that did not appear to be related to the funds. Smith also stated that he owned a trucking company (First Liberty Transport LLC). Trooper Payne later verified the existence of the company.

23. Smith continued to explain that he had gone to look at a truck to buy in Georgia. However, Smith could not tell the trooper how long it would take to get to back to the truck's location; where it was located; or on what road he and Ramdial had traveled to get there. Smith was not able to answer whether he had any paperwork dealing with the sale of the trailers and truck (ex. bill of sale, title etc.) or even say that he could provide troopers with such documents at a later date. Smith advised that his trucking company runs various loads for various customers, but provided no details.

24. While in the trooper's car after the initial interview, Smith contacted someone by phone and could be heard telling the individual that his company could run a load for them. The individual, heard on speaker phone, said, "I haven't heard from you in a while." This conversation was recorded. Smith appeared to be trying to create the appearance that he was obtaining business for his trucking company, following Trooper Payne's questions about his trucking business.

25. Trooper Payne spoke separately with Ramdial. Ramdial said he and Smith had gone to look at a truck in Georgia, but Smith did not like the truck. Ramdial could not identify the type of truck, stating that he did not know trucks. Ramdial could not identify where they had gone to view the truck, saying, "Honestly I was just driving." He stated he did not know the location where they had gone to view the truck, but stated that it was not too far away. He could not answer whether they stayed on I-95 and replied, "I don't know - dude wanted cash money for the truck." Ramdial could not identify the color of the truck or whether they went to a business or house. He stated that he did not pay attention to what they were doing, because Smith had just asked him to drive and he (Ramdial) is not a truck guy. He stated, "I do tattoos, I'm not a truck guy." Ramdial seemed to distance

himself from Smith and his activities. He also seemed to be avoiding giving details so as not to contradict anything Smith had said.

### DEA Interviews

26. SA Bradshaw and DEA Task Force Officer (TFO) Boree responded to the scene and also spoke with Smith and Ramdial. SA Bradshaw asked Smith how much money he had in the backpack. Smith stated, "$131,000.00" and explained that he obtained the money selling trucks and trailers. Smith said that he was not sure if he had any bills of sale or other documents for the trucks and trailers he sold and, if he did, where the documents were located. Smith stated, after some questioning, that he thought the last time he had sold a truck and trailer was probably January 2018. Smith advised that he was not sure when he his company had last run a load for someone and that it varies when his company transports a load for other companies. Smith further advised that he was pretty sure his company had paperwork about the transporting work it performed, but he was not sure where it was. SA Bradshaw asked if he could locate the paperwork or had any on his phone. Smith replied he could not at that time and his phone was dead.

27. Smith explained that he was traveling with so much money, because he had been going to buy a truck. SA Bradshaw asked what kind of

truck they went to purchase. Smith advised that it was a car hauler. Smith pointed to a car hauler traveling down the interstate and informed officers that was what it looked like. SA Bradshaw asked Smith where he was going to buy the truck. Smith replied, "Somewhere in Georgia." He then said, "I don't know, the driver have all that information." Smith told SA Bradshaw that he did not have the contact information to the place or individual where he was going to buy the truck; he said Ramdial knew the place and the person where they were going to buy the truck and had made all the arrangements, including contacting the seller.

28. Ramdial told SA Bradshaw a very different story. In response to questioning, Ramdial said that he did not know where they were going to purchase the truck or who they were going to purchase it from. He also denied making any of the arrangements. In fact, Ramdial said Smith made all of the arrangements and that he (Ramdial) was just the driver. SA Bradshaw asked Ramdial if he knew what the truck looked like they were going to purchase. Ramdial looked at a regular tractor trailer (not a car hauler) driving down the road and said, "Like that."

29. SA Bradshaw asked Smith if he filed taxes showing his income. Smith advised that he had not but planned to now.

30. In addition to telling conflicting stories and being entirely unable to provide any corroboration or even details about the supposed purchase, Smith and Ramdial were extremely nervous while answering questions. Ramdial was even "drinking" from an empty water bottle.

31. The official count of the currency found in SMITH's possession was $121,180.00 and found to be in the following denominations:

| | | | | |
|---|---|---|---|---|
| $100 | x | 352 | = | $35,200.00 |
| $50 | x | 487 | = | $24,350.00 |
| $20 | x | 3075 | = | $61,500.00 |
| $10 | x | 3 | = | $30.00 |
| $1 | x | 100 | = | $100.00 |

32. Based upon the totality of all the circumstances, including, but not limited to, the detection of narcotics substances on the seized currency by a trained narcotics canine; the extreme nervousness of Smith and Ramdial when questioned on the side of the road by law enforcement; the manner and means in which the currency was packaged, bundled and carried; the conflicting and inconsistent statements by Smith about the exact amount and the source of the large sum of currency; the conflicting and inconsistent statements by Smith and Ramdial about the details of their travel and about the purchase of the truck, there is probable cause to believe that the seized currency represented proceeds of narcotics or narcotics related transactions and/or was intended to be exchanged for narcotics or narcotics substances.

## V. CONCLUSION

33. As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the defendant funds are proceeds traceable to the exchange of a controlled substance or were intended to be exchanged for a controlled substance, in violation of 21 U.S.C.§§ 841 and 846 and, therefore, are subject to forfeiture pursuant to 21 U.S.C.§ 881(a)(6).

WHEREFORE, the United States of America requests that process in accordance with the provisions of Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, be issued against the defendant funds to enforce the forfeiture and that any person or persons having an interest therein be cited and directed to appear and show cause why it should not be decreed; and that defendant funds be forfeited to the United States; and that thereafter it be disposed of

according to law; and for such other and further relief as this case may require.

Dated: October 4, 2019.

                                    Respectfully submitted,

                                    MARIA CHAPA LOPEZ
                                  United States Attorney

By: /s/ Bonnie A. Glober
                                  BONNIE A. GLOBER
                                  Florida Bar No. 0748307
                                  Assistant United States Attorney
                                  United States Attorney's Office
                                  300 N. Hogan Street, Suite 700
                                  Telephone: (904) 301-6300
                                  Fax: (904) 301-6310
                                  E-mail: bonnie.glober@usdoj.gov

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Robney R. Bradshaw, declare under penalty of perjury that:

I am a Special Agent with the Drug Enforcement Administration. I have read the foregoing Verified Complaint for Forfeiture *In Rem* and have personal knowledge that the matters alleged as fact in the Complaint are true.

I have acquired my knowledge in this matter through my personal experience, observation, investigation, and training, and from witnesses, records, and other law enforcement officers.

Executed on this 03 day of October, 2019.

                                             *Robney R. Bradshaw*
                                             ROBNEY R. BRADSHAW
                                             Special Agent
                                             Drug Enforcement Administration

Case 3:19-cv-01139-BJD-MCR   Document 1-1   Filed 10/04/19   Page 1 of 1 PageID 16

≋JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
UNITED STATES OF AMERICA

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
AUSA Bonnie A. Glober, U.S. Attorney's Office, 300 N. Hogan Street, Suite 700, Jacksonville, FL 32202  (904) 301-6300

## DEFENDANTS
$121,180.00 IN UNITED STATES CURRENCY

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | [X] 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 U.S.C. 881(a)(6)
Brief description of cause:
civil forfeiture in rem

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  [X] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE 10/4/19
SIGNATURE OF ATTORNEY OF RECORD   Bonnie A. Glober

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE 39   MAG. JUDGE MCR